ACCEPTED
04-14-00560-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 2:56:23 PM
KEITH HOTTLE
CLERK

No. 04-14-00560-CR

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 2:56:23 PM
KEITH E. HOTTLE
Clerk

# IN THE COURT OF APPEALS FOR THE FOURTH JUDICIAL DISTRICT OF TEXAS, AT SAN ANTONIO

## Vernon Lee Travis III
Appellant

v.

## The State of Texas
Appellee

On Appeal from the 198th District Court of Kerr County in Cause No. B13-637; the Honorable Stephen B. Ables, Judge Presiding

---

# State's Brief

---

Submitted by:

**Scott F. Monroe**
District Attorney
402 Clearwater Paseo, Suite 500
Kerrville, Texas 78028
eMail: scottm@198da.com
Tel. 830-315-2460
Fax: 830-315-2461
State Bar Card No. 14272700

**Oral Argument Conditionally Requested**

## Identity of Parties and Counsel

Pursuant to the Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

## Appellant

### Vernon Lee Travis III
TDCJ No. 01932961

| Trial Counsel | Appellate Counsel |
|---|---|
| **Shawn C. Brown** | **Gary F. Churak** |
| SBN 24003613 | SBN 04245500 |
| **Brian Orihel** | 14310 Northbrook, Suite 210 |
| SBN 24079087 | San Antonio, Texas 78232 |
| 540 S. St. Mary's Street | |
| San Antonio, Texas 78205 | |

## State of Texas - Trial & Appellate Counsel

### Scott F. Monroe
District Attorney, 198th Judicial District
402 Clearwater Paseo, Suite 500
Kerrville, Texas 78028

| Trial Counsel | Appellate Counsel |
|---|---|
| **Scott Monroe** | **Scott Monroe** |
| SBN 14272700 | SBN 14272700 |
| **Donnie Coleman** | |
| SBN 04558600 | |

i

# Table of Contents

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Issues Presented in Appellant's Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

    1. **The trial court erred in excusing Juror #3 Lee Burns for cause.**

    2. **Whether the Appellant was provided adequate assistance of counsel.**

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Note About Abbreviations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Appellant's Point of Error One Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The State's Counter-Point. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    **The Record Demonstrates That Venireperson Burns Was Properly Excused.**

Facts Relevant to Counter-Point One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of the State's Argument - Counter-Point One. . . . . . . . . . . . . . . 11

Argument & Authorities - Counter-Point One. . . . . . . . . . . . . . . . . . . . . . 11

# Table of Contents
## (CONT)

Conclusion - Counter-Point One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Appellant's Point of Error Two Restated. . . . . . . . . . . . . . . . . . . . . . . . . 18

The State's Counter-Point. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**The Record Does Not Demonstrate Ineffective Assistance of Counsel.**

Facts Relevant to Counter-Point Two. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Summary of the State's Argument - Counter-Point Two. . . . . . . . . . . . . . 18

Argument & Authorities - Counter-Point Two. . . . . . . . . . . . . . . . . . . . 18

Conclusion - Counter-Point Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Compliance and Delivery . . . . . . . . . . . . . . . . . . . . . . . . 25

# Index of Authorities

**Federal Cases**:

*Strickland v. Washington*, 466 U.S. 668 (1984)........................ 19

**Texas Cases**:

*Bone v. State*, 77 S.W.3d 828 (Tex.Cr.App. 2002).................... 20

*Fuller v. State*, 829 S.W.2d 191 (Tex.Cr.App. 1992)............... 16, 17

*Garcia v. State*, 57 S.W.3d 436 (Tex.Cr.App. 2001)................... 21

*Gonzales v. State*, 353 S.W.3d 826 (Tex.Cr.App. 2011)............. 11-14

*Goodspeed v. State*, 187 S.W.3d 390 (Tex.Cr.App. 2005)............. 20

*Hernandez v. State*, 726 S.W.2d 53 (Tex.Cr.App. 1986)............. 19

*Hernandez v. State*, 988 S.W.2d 770 (Tex.Cr.App. 1999)............ 19

*Jones v. State*, 982 S.W.2d 386 (Tex.Cr.App. 1998)................... 14

*Lee v. State*, 206 S.W.3d 620 (Tex.Cr.App. 2006)..................... 15

*Lopez v. State*, 343 S.W.3d 137 (Tex.Cr.App. 2011)................... 19

*Menefield v. State*, 363 S.W.3d 591 (Tex.Cr.App. 2012)............. 20

*Prystash v. State*, 3 S.W.3d 522 (Tex.Cr.App. 1999)................. 14

*Rylander v. State*, 101 S.W.3d 107 (Tex.Cr.App. 2003)........... 20, 21

# Index of Authorities
(CONT)

## Texas Cases (CONT):

*Salinas v. State*, 163 S.W.3d 734 (Tex.Cr.App. 2005). . . . . . . . . . . . . . . 20

*Sandler v. State*, 977 S.W.2d 140 (Tex.Cr.App. 1998). . . . . . . . . . . . . . . 16

*Sauceda v. State*, 129 S.W.3d 116 (Tex.Cr.App. 2004). . . . . . . . . . . . 13, 14

*Standefer v. State*, 59 S.W.3d 177 (Tex.Cr.App. 2001). . . . . . . . . . . . . . 15

*Thompson v. State*, 9 S.W.3d 808 (Tex.Cr.App. 1999). . . . . . . . . . . . . 19, 20

*Tong v. State*, 25 S.W.3d 707 (Tex.Cr.App. 2000). . . . . . . . . . . . . . . . . 19

*Wood v. State*, 18 S.W.3d 642 (Tex.Cr.App. 2000). . . . . . . . . . . . . . . . . 22

## Texas Statutes / Codes:

Code of Criminal Procedure

Article 35.16, C.Cr.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Article 35.16 (a)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Article 35.16 (b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Article 35.16 (c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Statement of the Case

The following is a general statement of the nature of the cause or offense:

Appellant pled guilty before a jury to the offense of burglary of a habitation with intent to commit aggravated assault with a deadly weapon (RR Vol. 2, PP. 124-125; CR 44). The State presented corroborating evidence, and the jury found him guilty (CR 68). Punishment evidence was heard, and the jury assessed punishment at confinement for fifty-five (55) years (CR 74). The trial court's judgment was entered on May 8, 2014 (CR 75). Motion for New Trial was filed on June 5, 2014 (CR 84), and was denied on July 7, 2014 (CR 97). Notice of appeal was filed on July 30, 2014.

## Issues Presented in Appellant's Brief

The following are the points upon Appellant has predicated his appeal:

1. **The trial court erred in excusing Juror #3 Lee Burns for cause.**

2. **Whether the Appellant was provided adequate assistance of counsel.**

## Statement Regarding Oral Argument

The State requests oral argument only if Appellant is granted oral argument.

## Note About Abbreviations

In this brief, the State refers to the Clerk's Record as "CR" followed by the appropriate page: e.g., "(CR 123)." The State refers to the Reporter's Record as "RR" followed by the volume, page and line numbers: e.g., "(RR Vol. 3, P. 47, L. 12-15).

No. 04-14-00560-CR

IN THE COURT OF APPEALS FOR THE FOURTH JUDICIAL DISTRICT
OF TEXAS, AT SAN ANTONIO

**Vernon Lee Travis III**
Appellant

v.

**The State of Texas**
Appellee

On Appeal from the 198th District Court of Kerr County in Cause No. B13-637; the Honorable Stephen B. Ables, Judge Presiding

# State's Brief

TO THE HONORABLE FOURTH COURT OF APPEALS:

COMES NOW, the State of Texas, Appellee in the above styled and numbered cause, by and through her duly elected District Attorney, and respectfully files the State's Brief, and would show the Court as follows:

## Statement of Facts

Appellant pled guilty before the jury to the charged offense, burglary of a habitation. The indictment alleged that he entered the habitation with the intent

1

to commit and that he committed aggravated assault with a deadly weapon (CR 13; RR Vol. 2, P. 124). The State presented evidence that a dispatch regarding a burglary in progress had been received by the Sheriff's Office (RR Vol. 2, P. 136). Patrol units were alerted to look for a blue vehicle reported leaving the offense (RR Vol. 2, P. 137). The scene of the offense was in Kerr County (RR Vol. 2, P. 137). The suspects had been seen by a Department of Public Safety officer who gave chase leading to the suspects leaving their vehicle and running into the woods (RR Vol. 2, P. 139). Appellant surrendered while in the woods (RR Vol. 2, P. 140). He refused to say anything but that there was a sex offender running around (RR Vol. 2, P. 140).

Based on information from the co-defendant, Timothy Scott Pugh, regarding where he and Appellant had thrown the guns out of the car, two weapons were recovered (RR Vol. 2, PP. 140-141). Both guns were loaded (RR Vol. 2, P. 141).

An investigation at the crime scene indicated that rounds had been fired through the wall into a bedroom and into the door of the same bedroom (RR Vol. 2, P. 143). The shots were fired into the bedroom, and not therefrom (RR Vol.

2, P. 143). The defendants did not have permission to enter the residence (RR Vol. 2, P. 144).

The co-defendant, Pugh, had admitted to traveling to the home to rob the homeowner, and that he had kicked in the door (RR Vol. 2, P. 147). The door was found to be "busted open" (RR Vol. 2, P. 147; State's Exhibit 7, 8 & 9; RR Vol. 2, PP. 152-153). Pugh stated that he and Appellant went into the home with firearms drawn and that Appellant was wearing body armor (RR Vol. 2, P. 147).

The owner, Wylie Wilkinson, retreated to a bedroom and locked the door (RR Vol. 2, P. 147). He told the investigating officers that he and his sister had seen Appellant and Pugh coming in, seen the weapons and retreated, because they were in fear of their lives (RR Vol. 2, PP. 147-148). Appellant fired into the bedroom through the wall. Wilkinson fired a round into the floor, then jumped out the window, ran to a neighbor and asked them to call 911 (RR Vol. 2, P. 148).

Appellant was the one who fired the shots inside the residence (RR Vol. 2, P. 159). Pugh guarded the sister and the little boy (RR Vol. 2, P. 159). Mr. Wilkinson was in the room into which the weapon was fired (RR Vol. 2, P. 159). A recovered Glock .45 caliber had one unfired bullet when recovered (RR Vol.

3

2, P. 165), and Appellant had the Glock at the scene. Both weapons were capable

of inflicting serious bodily injury or death (RR Vol. 2, P. 166).

A search of the abandoned automobile discovered the co-defendant's EMT

jacket, boxes for the guns, along with Pugh's EMT badge (RR Vol. 2, P. 155).

The guns were found on the ground (RR Vol. 2, PP. 155-156).

## Appellant's Point of Error One Restated

### The trial court erred in excusing Juror #3 Lee Burns for cause.

## The State's Counter-Point

### The Record Demonstrates That Venire person
### Burns Was Properly Excused.

## Facts Relevant to Counter-Point One

Appellant pled guilty before a jury (RR Vol. 2, PP. 124-125). As a part of

the *voir dire* of the panel prior to that guilty plea, Venireperson Burns,

venireperson number 3, was identified as someone who worked with veterans:

```
MR.  MONROE:    Who  has  any  knowledge  or  experience  in
post-traumatic stress disorder? Anybody have knowledge -- let
me write this down. Number 3, Number 12, Number 5, 22, 23, 24,
10, 14, 33, 38.  Out of you people who have expressed some
knowledge about this, I want to ask a little bit further of
any of you either feel like either you or a loved one is
suffering from post-traumatic stress disorder? How many of you
have that situation? Number 14. Anybody else? 23. All right.
```

4

So the rest of you is it fair to say that you just have some general knowledge about it because you read about it? Is that it? Okay. Number 3.

PROSPECTIVE JUROR: A friend of mine.

MR. MONROE: You have a friend of yours. All right. Your number again? 38. And Juror Number 3, I see you're shaking your head. I'm not trying to embarrass you.

PROSPECTIVE JUROR: No, I'm a veteran myself. I'm a veterans service officer for Legion and I've dealt with a lot of vets.

MR. MONROE: All right. Fair enough. Appreciate that. Number 19.

(RR Vol. 2, PP. 51-52). Later, while the defense engaged in *voir dire*, Mr. Burns was more fully examined:

MR. BROWN: Does anybody disagree? If you would raise your card, I know that the prosecution asked this, who here has served in the military or currently are serving in the military? Okay. I think Juror Number 3, you mentioned that you are familiar with PTSD; is that right?

PROSPECTIVE JUROR: Yes.

MR. BROWN: Do you know what that stands for?

PROSPECTIVE JUROR: Post-traumatic stress disorder.

MR. BROWN: And you sound pretty familiar with it, give me just what your definition or what that means to you.

PROSPECTIVE JUROR: Well, it's not limited to just veterans but veterans are the largest category of people who are likely to experience it. It is an individual who have faced a trauma beyond their mind's ability to easily deal with. It doesn't necessarily mean that they've killed or had their leg blown off or whatever. It could be a car accident. It could be your dog got run over. Anything that takes your brain beyond its ability to cope or deal with a situation may cause ongoing secondary psychological issues. So if you're a battle field veteran, a door slamming might sound like a gunshot and you might suddenly be back in the sand box. Any room full of children, this could be a bad thing.

5

If your dog got run over, you see someone abusing a pet, you may go over and soundly thrash them as my English friends would say.

Post-traumatic stress is what it sounds like. Something serious happened in your life and the event takes you out of the every day situation you may be in and puts you somewhere that you were and did not want to be.

MR. BROWN: Okay.

PROSPECTIVE JUROR: That's simple plain English terms. Not a psychologist. I don't care for their definition but in a real street sense, that's what it is.

MR. BROWN: Okay. And is it readily apparent, like if I was suffering from it and you saw me walking down the street, could you tell just by looking at me externally I think that guy is suffering from PTSD?

PROSPECTIVE JUROR: Your wife would know, your parents would know, but your best friend might not know. So a guy walking down the street, no. Obviously people left untreated, uncared about, can evolve into a state that you know something is seriously wrong but you wouldn't necessarily know that it was PTSD at the root.

MR. BROWN: Now you said somebody left uncared for, what do you mean by that?

PROSPECTIVE JUROR: It's a condition brought about by events, but it still affects your emotional and mental state. So as veterans, we help veterans because we've been there. We know the kinds of events we've been through, so we talk to each other. We help each other make sense of the events in our lives. If you don't have that outlet, if nobody around you understands you, that's one of the reasons veterans are so active trying to help veterans.

If you are left in that condition and you are not supported would be the best way to say that, it isolates you, makes you feel alone. It leads to secondary conditions, depression, possibly alcoholism, substance abuse. There is a lot of ways it can go wrong.

MR. BROWN: Is that -- are those normal side effects of PTSD, somebody who suffers depression or --

PROSPECTIVE JUROR: Normal is --

6

MR. BROWN: -- alcoholism or drugs or is that some things you see from people who are suffering that?

PROSPECTIVE JUROR: There is probably a slightly higher incidence, but normal is like saying the fact that you get two red ties and a black tie is a normal tie. It affects everybody in a different way and it depends on what the event was that happened. That's why it's so hard to get appropriate treatment for every individual who may suffer from it. It's a very strange thing. It affects you based on what happened to you, the individual.

MR. BROWN: Okay. And do you see that people are released from the military without ever being diagnosed and put out on the streets without the proper care from the military?

PROSPECTIVE JUROR: That has happened.

MR. BROWN: Okay. I mean, this isn't just some made up phenomena PTSD that doesn't really exist?

PROSPECTIVE JUROR: Again, it's not just the military. It can be anything. Your brain couldn't cope with the situation. So while the bullet perception is it's a veteran disease, that's not necessarily true. We get a bad rap sometimes, but the truth is we put ourselves in positions so everybody else doesn't have to.

MR. BROWN: Sure.

PROSPECTIVE JUROR: And, yeah, we need -- we need to help the people who have been there and done that for us.

(RR Vol. 2, PP. 64-68). Later, while the venireperson was being questioned privately before the Court, the following transpired:

THE COURT: This is Juror Number 3, Lee Burns. And they need to ask you a couple of questions at the bench.

PROSPECTIVE JUROR: All right.

MR. MONROE: Mr. Burns, first of all, thank you for your response and your input out there. I appreciate that and appreciate the services you have. I want to ask just a couple of questions trying to get some brutal honesty here and not that you would want to do anything but that here.

7

PROSPECTIVE JUROR: I take an oath that is very serious.

MR. MONROE: If you have a situation where you were presented with evidence of PTSD, could you ever entertain a sentence of 99 years?

PROSPECTIVE JUROR: No, sir.

MR. BROWN: Judge, I'm going to object. That's improper commitment in this case. There is no evidence of anything specific in this particular case. That's an improper commitment.

MR. MONROE: Your Honor, our jury has been voir dired ad nauseam on PTSD, and I just asked if he could ever consider that. That's kind of like ignoring an elephant in the room.

MR. BROWN: Judge, the way it should be framed is could you consider it under any circumstances, not limited to one particular issue.

THE COURT: Yeah, it's a -- I don't want anybody to anticipate what's going to happen in this trial, and I cannot tell you right now if PTSD will even come in because nobody knows until we start. It is a little bit of a problem because we've talked about it so much it has become the issue. So I'm going to overrule the objection and let you go into it a little bit more because we've had extensive conversation about it, but I want to not warn you Mr. Monroe, but you can't assume that --

PROSPECTIVE JUROR: I understand.

THE COURT: -- the way you think about it or the way anybody else thinks about it or at all it's going to come in.

PROSPECTIVE JUROR: Well, we haven't received any information that there has been a diagnosis or there is any particular thing. However -- and this is probably going to affect more than just me. I know this marine back there who suffered from it. If PTSD is a factor, there is no mention of any option other than a sentence. If the guy has got PTSD, he's got to have treatment so that's another factor that's in the back of the heads of the veterans in the room.  Why is there not an option, even if punishment is required, to offer assistance to this guy as well because sometimes, hey, just because we're vets doesn't make us less human. We all make mistakes. We all do bad things from time to time and we all have to pay those consequences. But if you're a veteran and you've got PTSD based on being a veteran, you deserve treatment because you were put where you were not otherwise have been that you

otherwise would not have done. He's in service to us, the rest of us, so we owe treatment to him.

MR. BROWN: Judge, I'm going to reurge my objection at this time, Judge, that we're getting into potential facts of the case. There is no facts presented in this. We don't know if there was six or ten people shot at, one person shot at, nobody shot at, PTSD or not, and I think we're getting into --

THE COURT: Do you have any other questions?

MR. MONROE: Well, and I don't have a clue on what's going to be brought out. I don't have a clue.

PROSPECTIVE JUROR: I understand.

MR. MONROE: I know what the State will bring out, but I don't have a clue on what the defense is going to do. Another question I have is that you have a lot of knowledge. Can you keep it to yourself? In other words, if it doesn't come out from the witness chair, you can't give your own opinions about it and it sounds to me like that might be very difficult for you. I don't mean that insulting.

MR. BROWN: Judge, I'm going to object to that. If -

THE COURT: The objection is?

MR. BROWN: The objection is that's a misstatement. If he has a personal knowledge of PTSD, he can use that toward his deliberations concerning this case. If he hears a particular witnesses testify about PTSD and what their testimony is, he can obviously tell the jurors, well, I believe he's credible because he talked about x, y and z or I believe he's not credible because he didn't talk about x, y, and z and that's going to be based on his personal experiences. So he can take his personal experiences back there. Again, we're talking about specific evidence in this case and we're going down a trail of evidence that we don't know if it's going to be presented or see if it's going to be.

THE COURT: I'll overrule your objection. Go ahead finish your answer -- your question.

MR. MONROE: If I didn't state it accurately, each individual juror is a part of their own personal environment.

PROSPECTIVE JUROR: Sure.

9

MR. MONROE: And that's part of the process. You're absolutely entitled to it. What I meant was that you can't share it. Do you see what I am saying? You can't give your knowledge to it. If it didn't come from the witness stand, it's not appropriate for you to share anything you know with the other jurors. That's what I meant. Not that it can't be a factor for you --

PROSPECTIVE JUROR: I understand.

MR. MONROE: -- but it can't be for somebody else. And I don't know that I'm asking you to do something, but for some people, that might be saying, you might as well tell me I can't breathe.

PROSPECTIVE JUROR: Well, given the fact that it hasn't come up yet, several years ago, I could have definitively said, no problem because I was a different person then, but I've been trained and dealt with this issue. It would be very hard. I'm not going to lie to you about that. If I know something and it has a bearing, it would be very hard not to say something.

MR. MONROE: You would have to make a decision based solely on what you hear from that witness stand and nothing else. Can you do that? You're the only one that can answer the question. There is no shame in either answer.

PROSPECTIVE JUROR: Well, since I have nothing to go on, I could just throw out a yes or no. Truth is that based on what I hear, it's really going to determine what did I know because they said something or didn't say something. So especially if somebody doesn't say something that should have been said, that falls into that. That's why it's hard. If I know it, I know it. And that's a -- I can try but --

MR. MONROE: The risk is there?

PROSPECTIVE JUROR: The risk is there.

MR. MONROE: I don't have any further questions of this witness.

MR. BROWN: I have no further questions.

THE COURT: Okay. If you'll have a seat.

PROSPECTIVE JUROR: Yes, sir.

THE COURT: We'll wait to the end for any other challenges.

10

(RR Vol. 2, PP. 86-91). The last mention of Mr. Burns was:

> THE COURT: And it looks to me like I need to hear what y'all want to do on 3, 26, and 24. Does anybody -- let's take 3 first. Does anybody want to issue a challenge for cause on Number 3?
>
> MR. MONROE: I think we're inviting jury misconduct with Number 3. I'm concerned about his inability to commit, that he would not inject personal knowledge into the equation and so the State feels like that's an impossible situation for him to be in, and I challenge him for cause for that reason.
>
> THE COURT: And your response?
>
> MR. BROWN: Yes, I think that he said, yes, he did have past experiences. He talked quite a bit about PTSD and just because he has past experiences and knowledge of it doesn't necessarily disqualify him as a juror. He never came out and said, I'm not going to do that, I am going to do this, or I am going to do that. He said I would try and I would tell you that I'm going to do that, but I can't tell you for sure. He hasn't heard any of the facts. He doesn't know the evidence, so he can't sit here and tell us what he is or is not going to do.
>
> THE COURT: I'll sustain the challenge for cause for Number 3.

(RR Vol. 2, PP. 113-114).

## Summary of the State's Argument - Counter-Point One

The record demonstrates that the challenge for cause to the venireperson was properly sustained.

## Argument & Authorities - Counter-Point One

The entire record of the *voir dire* proceedings are examined by an appellate court to determine if the trial court properly granted a challenge for cause. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex.Cr.App. 2011). An appellate court

11

must give great deference to the trial court's decision to grant a challenge for cause "because the trial judge is present to observe the demeanor of the venireperson and to listen to his tone of voice." *Gonzales*, 353 S.W.3d at 831. A trial court's ruling on a challenge for cause may be reversed only if it is evident the court committed a clear abuse of discretion. *Gonzales*, 353 S.W.3d at 831.

The trial court correctly granted the challenge for cause. The venireperson could not assure the trial court that he would be able to restrain himself from bringing in his specialized knowledge of Post Traumatic Stress Disorder ("PTSD") to discussions with the jury, were he selected:

> MR. MONROE: And that's part of the process. You're absolutely entitled to it. What I meant was that you can't share it. Do you see what I am saying? You can't give your knowledge to it. If it didn't come from the witness stand, it's not appropriate for you to share anything you know with the other jurors. That's what I meant. Not that it can't be a factor for you --
>
> PROSPECTIVE JUROR: I understand.
>
> MR. MONROE: -- but it can't be for somebody else. And I don't know that I'm asking you to do something, but for some people, that might be saying, you might as well tell me I can't breathe.
>
> PROSPECTIVE JUROR: Well, given the fact that it hasn't come up yet, several years ago, I could have definitively said, no problem because I was a different person then, but I've been trained and dealt with this issue. It would be very hard. I'm not going to lie to you about that. If I know something and it has a bearing, it would be very hard not to say something.

```
MR. MONROE: You would have to make a decision based solely on
what you hear from that witness stand and nothing else. Can
you do that? You're the only one that can answer the question.
There is no shame in either answer.

PROSPECTIVE JUROR: Well, since I have nothing to go on, I
could just throw out a yes or no. Truth is that based on what
I hear, it's really going to determine what did I know because
they said something or didn't say something. So especially if
somebody doesn't say something that should have been said,
that falls into that. That's why it's hard. If I know it, I
know it. And that's a -- I can try but -

MR. MONROE: The risk is there?

PROSPECTIVE JUROR: The risk is there.
```

(RR Vol. 2, PP. 90-91).

The trial court heard the venireperson express his doubts about his ability to restrain himself from adding evidence to the mix when he stated, "If I know something and it has a bearing, it would be very hard not to say something." The trial court was present to observe the demeanor of the venireperson and to listen to his tone of voice. *Gonzales*, 353 S.W.3d at 831. The venireperson continued, "So especially if somebody doesn't say something that should have been said, that falls into that." The trial court did not abuse its discretion in any manner in granting the challenge for cause.

The reviewing court must uphold the trial court's decision if it was correct under any theory of law applicable to the case, even if the trial court gave an incorrect reason for its decision. *Sauceda v. State*, 129 S.W.3d 116, 120

13

(Tex.Cr.App. 2004); *Prystash v. State*, 3 S.W.3d 522, 527 (Tex.Cr.App. 1999); *Jones v. State*, 982 S.W.2d 386, 389 (Tex.Cr.App. 1998). In this regard, it should be noted that while the trial court gave no reason for its decision to grant the State's challenge for cause, there was an additional reason which becomes apparent when a review of the entire *voir dire* is made. *Gonzales*, 353 S.W.3d at 831.

Article 35.16, C.Cr.P., permits either the State or the defense to challenge a particular venire member for cause  Additionally, Article 35.16, subsections (a)(9) and (c)(2), provide that a venire member may be challenged for cause when he "has a bias or prejudice in favor of or against the defendant . . . [or] the law upon which either the State or the defense is entitled to rely." Under Art. 35.16, the test is whether the venire member's bias or prejudice would substantially impair his ability to follow his oath and the instructions of the court. *Gonzales*, 353 S.W.3d at 831-832.

In this case, the State had an interchange with the venire person who replied:

> PROSPECTIVE JUROR: I take an oath that is very serious.
>
> MR. MONROE: If you have a situation where you were presented with evidence of PTSD, could you ever entertain a sentence of 99 years?

14

PROSPECTIVE JUROR: No, sir.

(RR Vol. 2, P. 86). While Appellant objected to this question as an improper commitment question, that objection was overruled (RR Vol. 2, P. 87). Because it delved into whether the prospective juror could consider the full range of punishment, the question was proper.

In *Standefer v. State*, 59 S.W.3d 177 (Tex.Cr.App. 2001), the Court of Criminal Appeals established the test for determining whether a question is an improper commitment question: (1) whether the question is a commitment question; (2) if so, whether the commitment question gives rise to a valid challenge for cause; and (3) if it does, whether the question adds facts beyond those necessary for a challenge for cause. *Standefer*, 59 S.W.3d at 179-184; see also *Lee v. State*, 206 S.W.3d 620, 621-623 (Tex.Cr.App. 2006). Even assuming that the question was a commitment question, it was not improper because it demonstrated the grounds for a valid challenge for cause. While PTSD was discussed extensively prior to the question being asked of the venireperson, it was only he who worked with veterans in dealing with the problem of PTSD.

The answer given by the venireperson exposed his bias against a potential punishment upon which the State was entitled to rely. It is plain that the

15

venireperson could not consider the maximum sentence available. He not only specifically denied the potential punishment but he gave his reasons and made his attitude clear to the trial court:

> PROSPECTIVE JUROR: Well, we haven't received any information that there has been a diagnosis or there is any particular thing. However -- and this is probably going to affect more than just me. I know this marine back there who suffered from it. If PTSD is a factor, there is no mention of any option other than a sentence. If the guy has got PTSD, he's got to have treatment so that's another factor that's in the back of the heads of the veterans in the room. Why is there not an option, even if punishment is required, to offer assistance to this guy as well because sometimes, hey, just because we're vets doesn't make us less human. We all make mistakes. We all do bad things from time to time and we all have to pay those consequences. But if you're a veteran and you've got PTSD based on being a veteran, you deserve treatment because you were put where you were not otherwise have been that you otherwise would not have done. He's in service to us, the rest of us, so we owe treatment to him.

(RR Vol. 2, P. 87).

Article 35.16 (b)(3), C.Cr.P., permits the State to challenge for cause a juror who indicates that he has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment To avoid disqualification on the ground of bias, jurors must be able, in a sense, to conceive both of a situation in which the minimum penalty would be appropriate and of a situation in which the maximum penalty would be appropriate. *Sandler v. State*, 977 S.W.2d 140, 142 (Tex.Cr.App. 1998); *Fuller v. State*, 829 S.W.2d

16

191, 200 (Tex.Cr.App. 1992). It is plain that venireperson # 3 could not consider a sentence of ninety-nine (99) years when PTSD was a factor. That PTSD was to be a major factor in Appellant's case was clear throughout *voir dire*, making the question relevant and the answer determinative. Substantial impairment of the venireperson's ability to follow his oath was clearly shown.

A complete review of the *voir dire* demonstrates that Venireperson Number three was challengeable for cause for several reasons. The trial court did not abuse its discretion.

## Conclusion - Counter-Point One

The venireperson was unable to consider the full range of punishment if there was an issue of Post Traumatic Stress Syndrome involved with a case. Given that Appellant had spent a large amount of time with this particular venireperson examining PTSD and its effects, inquiry into the issue and any potential effects it would have on the decision making of the vernireperson was appropriate. His answer, that he would not be able to consider a ninety-nine (99) year sentence when PTSD was involved, demonstrated his bias and the support for the challenge for cause made by the State and granted by the trial court. Additionally, the venireperson admitted that he would be unable to restrain

himself from injecting his specialized knowledge into the jury deliberations. The challenge for cause was properly requested and the trial court's action was not a abuse of discretion.

## Appellant's Point of Error Two Restated

**Whether the Appellant was provided adequate assistance of counsel.**

## The State's Counter-Point

**The Record Does Not Demonstrate Ineffective Assistance of Counsel.**

## Facts Relevant to Counter-Point Two

The State relies on the facts as set out in the Statement of Facts, *supra*, and as set forth herein.

## Summary of the State's Argument - Counter-Point Two

The record is insufficient to reflect any instance of ineffective assistance of counsel and, as such, is insufficient to warrant relief.

## Argument & Authorities - Counter-Point Two

To determine whether Appellant's trial counsel rendered ineffective assistance, an appellate court must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of

18

reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for her counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex.Cr.App. 1986). This standard applies to claims of ineffective assistance of counsel in both the guilt/innocence phase and the punishment phase of noncapital trials. *Hernandez v. State*, 988 S.W.2d 770, 772-773 (Tex.Cr.App. 1999).

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Cr.App. 2000).

> [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Counsel's deficiency must be affirmatively demonstrated in the record, because the reviewing court must not engage in retrospective speculation. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex.Cr.App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999). An

19

ineffective assistance claim must be "firmly founded in the record," and the record must affirmatively demonstrate the claim has merit. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex.Cr.App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Cr.App. 2005).

In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. See *Rylander v. State*, 101 S.W.3d 107, 110-111 (Tex.Cr.App. 2003). The reason is that, with respect to allegations of ineffective assistance of counsel, the record on direct appeal is generally undeveloped and rarely sufficient to overcome the presumption that trial counsel rendered effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Cr.App. 2002); *Thompson*, 9 S.W.3d at 813-814. Rarely does the record on direct appeal position an appellate court to fairly evaluate the merits of an ineffective assistance claim. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Cr.App. 2005); *Thompson*, 9 S.W.3d at 813-814. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 That is the situation in the present case.

The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander*, 101 S.W.3d at 111. If trial counsel has not had an opportunity to explain his actions, an appellate court should not find deficient performance, unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Cr.App. 2001). In the instant case, the complained of actions fall within the first category, those requiring some sort of explanation by trial counsel.

No evidentiary hearing on a motion for new trial was held, allowing for such an explanation (RR MNT Vol. 1, PP. 1-13). Instead, the trial court, upon the State's objections, determined that the motion was not in good form and denied the motion (RR MNT Vol. 1, PP. 7-8, 9-12, 13). The record is insufficient to provide any support whatsoever and, thus, Appellant has failed in his burden of proof on this issue.

Appellant complains of two instances of counsel's performance which he claims to be ineffective. First, he complains that counsel failed to file a motion to suppress regarding the recorded interview of Appellant, during which he was

21

purportedly intoxicated. Appellate counsel asserts this to be highly prejudicial. The State would assert, however, that there are several reasons why competent counsel would not file such a motion. Those reasons could include the fact that his defense was that Appellant suffered from PTSD typified by polysubstance abuse, and that the interview highlighted that condition.

Additionally, present counsel does not suggest any potential grounds for such a motion and cites to only *Wood v. State*, 18 S.W.3d 642 (Tex.Cr.App. 2000). Frankly, *Wood* seems to have no connection to the issue other than to demonstrate that a motion to suppress can be filed. It does not discuss in any manner a requirement that a motion be filed in any particular situation nor does it engage in any discussion of effectiveness of counsel.

Additionally, given the testimony in the cause, detailed above, any failure to file a motion to suppress the video interview would have been harmless, given the guilty plea to the jury and the overwhelming supporting evidence of Appellant's guilt in the cause.

Appellant additionally contends that counsel was ineffective for failure to "explore the effects of" an unknown medication on the ability of Appellant to testify. Here, too, the record is not developed to the point that the medication has

22

even been identified. Trial counsel cannot be faulted on the basis of this allegation, as it has no basis in the record.

## Conclusion - Counter-Point Two

The issue of ineffective assistance of counsel is truly not ripe as the record does not contain any explanation given by trial counsel as to the two allegations of deficient conduct. Appellant has made no allegation of ineffective assistance of counsel which can result in any type of relief without further investigation and evidence. Additionally, the record does not contain sufficient facts showing the type of medication given demonstrating a deficiency in investigating the administration of the drug to Appellant. This record, undeveloped by Appellant as it is, is insufficient to support any allegation of ineffective assistance of counsel.

## Prayer

WHEREFORE, PREMISES CONSIDERED, the undersigned, on behalf of the State of Texas, respectfully prays that this Honorable Court will review this brief and upon submission of the case to the Court will affirm the judgment and conviction of the court below.

Respectfully submitted,

**Scott F. Monroe**
District Attorney, 198th District Court
402 Clearwater Paseo, Suite 500
Kerrville, Texas 78028
eMail: scottm@198da.com
Tel. 830-315-2460
Fax: 830-315-2461
State Bar Card No. 14272700

Attorney for the State of Texas

24

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 5,924 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on XXXX, a true and correct copy of the above and foregoing "State's Brief" was transmitted electronically to Gary F. Churak (churaklaw@msn.com), counsel of record for Appellant.

Scott F. Monroe

25